# In the United States Court of Federal Claims

**No. 14-1213C**
**Filed: August 19, 2015**

```
* * * * * * * * * * * * * *   *
                              *
DONALD  A.  WOODRUFF  and  THE    *
DUCKEGROUPE, LLC,                 *
                              *
              Plaintiffs,     *
                              *
       v.                     *
                              *
                              *
UNITED STATES,                *
                              *
              Defendant.      *
                              *
* * * * * * * * * * * * * *   *
```

<u>Pro Se</u> **Plaintiff; Breach of Contract; Motion to Dismiss; Lack of Subject Matter Jurisdiction; Privity of Contract; Election of Forum; Statute of Limitations**

**Donald A. Woodruff**, Bay Village, OH, <u>pro se</u>.

**Amelia Lister-Sobotkin,** Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for the defendant. With her were **Franklin E. White**, Assistant Director, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Division, **Benjamin C. Mizer**, Principal Deputy Assistant Attorney, Civil Division, Washington, D.C. Of counsel, **Lindsay C. Roop**, Office of Regional Counsel, Department of Veterans Affairs, Columbus, OH.

## O P I N I O N

<u>HORN, J.</u>

### FINDINGS OF FACT

On January 20, 2015, Donald A. Woodruff together with The DuckeGroupe, LLC,[1] doing business as Haven House for Homeless Veterans, filed a transfer complaint against the United States in the United States Court of Federal Claims, alleging a breach of contract by the United States Department of Veterans Affairs and one of its affiliated facilities. On April 18, 2014, plaintiffs had filed a complaint, the caption of which listed them as "Haven House for Veterans (dba) The DuckGroupe, Donald A. Woodruff," in the United States District Court for the Northern District of Ohio. The complaint listed "Louis Stokes Veterans Administration. VA Healthcare Systems of Ohio," a facility operated by

---

[1] In his filings with this court, Mr. Woodruff refers to this entity as both "The DuckGroupe" and "The Duck Groupe." Because it was used in the caption of the complaint with this court, the court will use "DuckGroupe" throughout this Opinion.

the United States Department of Veterans Affairs (VA), and the Office of Acquisition and Materiel Management, an agency of the VA as the defendants.[2] In the April 18, 2014 complaint submitted to the District Court, plaintiffs, with Mr. Woodruff acting pro se, sought $47,000.00 in damages for slander and an alleged breach of a contract DuckeGroupe entered into with the VA to provide housing and other services to homeless veterans. Plaintiffs requested judicial review of a previous decision of the United States Civilian Board of Contract Appeals (CBCA). On October 8, 2014, an Order issued by the District Court amended the caption of the case in the District Court to list Donald A. Woodruff as the sole plaintiff, dismissed Mr. Woodruff's slander claim and request for judicial review, and ordered that the remaining claim for breach of contract be transferred to the United States Court of Federal Claims. See Woodruff v. Louis Stokes Veterans Admin. VA Healthcare Sys. of Ohio, No. 1:14-CV-837 (N.D. Ohio Oct. 8, 2014). As noted above, a complaint was filed in this court on January 20, 2015 listing the plaintiffs as "THE DUCKGROUPE, LLC., dba HAVEN HOUSE FOR HOMELESS VETERANS, Donald A. Woodruff" and was signed by Mr. Woodruff. (capitalization in original).

The genesis of the dispute arose in July 2010, when the Louis Stokes Cleveland Department of Veterans Affairs Medical Center in Brecksville, Ohio issued a Request for Quote (RFQ), number VA25010RQ0236, seeking a contractor to provide services to veterans in its Health Care for Homeless Veterans program, in order to "remove homeless Veterans from the street or habitation unfit for Veterans and place them in community-based, residential environments with sufficient therapeutic services to meet the needs of those Veterans." The services to be provided by the contractor sought in this RFQ included room and board, meals, laundry services, and therapeutic and rehabilitative services.

The RFQ stipulated that the contract would be "an indefinite delivery, indefinite quantity contract because it is impossible to determine with any certainty the amount of services that will be required under this contract." The solicitation further specified that "no obligation will be incurred by the Department of Veterans Affairs except for services rendered under this contract pursuant to referrals issued by the Department of Veterans Affairs for residential treatment of specific beneficiaries." The RFQ also provided that the contract period would include a base year, 2010-11, and four successive option years, covering the years 2011-12, 2012-13, 2013-14, and 2014-15, the exercise of which would be left to the "sole discretion" of the VA. The solicitation further specified that the maximum value of each yearly term would be calculated according to the formula "daily rate x number of available beds x 365 days."[3]

---

[2] The court notes that although a motion to proceed in forma pauperis in the suit in the Northern District of Ohio was filed and granted, no additional application was filed in this court following the transfer of this case to the United States Court of Federal Claims pursuant to the District Court's October 8, 2014 transfer Order. The court, however, continues to treat Mr. Woodruff as a pro se plaintiff.

DuckeGroupe, a limited liability company organized under the laws of the State of Ohio, submitted a quote in response to the VA's RFQ on July 28, 2010, offering to provide twelve beds for homeless veterans, at a rate beginning at $50.00 per veteran per day, resulting in a maximum cost for the first year of $219,000.00. The quote also described Mr. Woodruff as a "DIRECTOR" of the DuckeGroupe. (capitalization in original). According to plaintiff's complaint in the District Court, after further discussions, the parties agreed that DuckeGroupe would maintain the capacity to serve up to nine veterans at its facility, Haven House, at a per-diem price of $60.00 per veteran per day, which computes to a maximum cost for the first year of $197,100.00.[4] The maximum occupancy figure and per-diem rate described above were memorialized in the final contract, number VA250-P-0592, which was executed by Mr. Woodruff as "MEMBER Ducke Groupe, LLC" on September 22, 2010, and by Dara Greene on behalf of the VA on September 23, 2010. The price-cost schedule attached to the executed contract guaranteed DuckeGroupe neither a minimum payment nor a minimum level of occupancy. With respect to payment, the price-cost schedule provided that payments made by the VA under the contract "shall be made monthly and in arrears upon receipt of properly prepared invoice," which "will be paid at the per diem rate for days of residential placement already completed with services provided as described in the Statement of Work."

Problems in the contractual relationship allegedly began to arise at the end of the base year. According to plaintiff's complaint in the District Court, sometime in September or October 2011, the Contracting Officer's Technical Representative informed DuckeGroupe that, because the VA had not yet exercised its 2011-12 option, Haven House had to send out any veterans then staying at the facility by November 1, 2011 and direct them to a shelter located at 2100 Lakeside Avenue in Cleveland, Ohio. On October 1, 2011, the VA's Contracting Officer assigned to the contract, Glen Johnson, executed an Amendment of Solicitation/Modification of Contract, which exercised the 2011-12 option year, retroactive to September 23, 2011. The document indicated that the per-diem rate for veterans housed at DuckeGroupe's facility would remain at $60.00 per veteran per day, and that "[a]ll other terms and conditions of the agreement shall remain the same." According to plaintiff, however, this amended contract was not received by DuckeGroupe until November 17, 2011, despite being executed by both parties as of October 1, 2011.

Occupancy in the Haven House facility remained low in the early months of the 2011-12 option year before reaching an average occupancy level of 6.7 out of 9 beds filled per day in February 2012. According to Mr. Woodruff's complaint in the District Court, however, his "efforts and program sustainability was challenged and jeopardized"

---

[3] While 365 days were listed for the 2010-11 base year and 2012-13, 2013-14, and 2014-15 option years, the formula for the 2011-12 option year would include 366 days, reflecting the fact that 2012 was a leap year.

[4] The court notes that despite this calculation of the maximum cost of the contract assuming full occupancy, the price-cost schedule attached to the executed contract states that "[t]otal funding for this new program for FY 2010 is $177,390." No explanation has been given for this discrepancy, nor have the parties referenced it in any of their filings.

by a unilateral change in policy, of which DuckeGroupe was informed in February 2012. On February 10, 2012, Nicole Wiley, an employee of the VA, emailed Mr. Woodruff to confirm several changes to the intake and discharge procedures Haven House was to follow under the parties' contract, namely that any veteran seeking admission to Haven House must first be cleared though the 2100 Lakeside Avenue shelter's intake procedure and "should have an exit plan before being admitted to Haven House." It appears that Mr. Woodruff expressed disagreement with the VA's intake process prior to Ms. Wiley's February 10, 2012 email, stating in a January 31, 2012 email to Veronica Hawkins, another VA employee, that "our contention is that there is a marked difference between concerned screenings and the making of decisions in a vacuum without collaborative discussion." Mr. Woodruff claims the policy changes outlined in Ms. Wiley's email precipitated a sharp decline in Haven House's occupancy over the remainder of the option period.

Concerned about the continued low occupancy rate at Haven House, Mr. Woodruff met with Ms. Hawkins on or about March 3, 2012, to explain that DuckeGroupe was running at a deficit, given that the occupancy of Haven House was below the level needed to cover its fixed operating expenses. During this meeting, according to plaintiff's complaint in the District Court, and again in a May 11, 2012 email to Kathleen Penman, another VA employee, Mr. Woodruff stated that Haven House needed to maintain an occupancy rate of at least six out of the nine available beds in order for DuckeGroupe to cover its operational expenses and ensure that it could continue to fulfill its contractual obligations. According to Mr. Woodruff's accounting, Haven House's average daily occupancy rate did not reach six out of nine beds filled in any month after February 2012.

On June 27, 2012, Mr. Woodruff received what is described in the District Court complaint as "the most disturbing communication of all," an email from Jaroslaw Romaniuk, a VA employee, informing him that because "we had to deal with the fact that in recent months we spent less money on our contract with Haven House that [sic] it was anticipated," the number of beds requested under the contract would be reduced from nine to five for the remainder of the option year. An email Mr. Woodruff received from Ms. Wiley the following day, June 28, 2012, however, explained that Mr. Romaniuk's email had been the result of a "misunderstanding," and instructed Mr. Woodruff to disregard the previous day's email and continue operating Haven House at the nine-bed capacity stipulated in the contract.

On September 7, 2012, Mr. Woodruff was informed in an email from the Contracting Officer, Mr. Johnson, that the VA had decided not to exercise the 2012-13 option in DuckeGroupe's contract, citing the department's changing organizational needs as the reason for this decision. In his reply to Mr. Johnson, dated September 17, 2012, Mr. Woodruff reiterated his concerns about the "serious financial deficit" in which DuckeGroupe found itself due to the decline in occupancy rates, blaming the VA's actions, including the delayed renewal of the 2011-12 option and unilateral policy changes communicated to him in February 2012, with having "the net effect of creating an under-utilization of Haven House as the primary resource intended in the contract." Also in that correspondence, Mr. Woodruff requested that the VA "honor the terms of the contract by reimbursing us [DuckeGroupe] the minimum cost of providing the services at Haven

4

House Residence," given that the occupancy level of Haven House averaged 4.3 beds for the 2011-12 option year, below the six-bed break-even mark identified by Mr. Woodruff as necessary for DuckeGroupe to cover its operating expenses.

Mr. Woodruff next emailed Mr. Johnson on October 11, 2012, requesting an equitable adjustment in the sum of $47,440.00 to cover his operating deficit, a request echoed in a follow-up email, apparently sent on October 15, 2012,[5] and another email to Mr. Johnson which, Mr. Woodruff claims, was sent on November 1, 2012. The Contracting Officer formally denied Mr. Woodruff's claim in a decision dated January 9, 2013. In the decision, Contracting Officer Johnson stated that the contract was established as one of indefinite delivery and indefinite quantity and specified that the government would bear no obligation except as to services rendered. The decision indicated that the government, having timely paid all of the monthly invoices issued by Haven House, had satisfied its contractual obligations and, therefore, "does not owe Haven House any additional compensation for their services . . . ." The correspondence conveying this decision concluded by informing Mr. Woodruff that he could appeal the decision either by sending a notice of intent to appeal to the CBCA within ninety days of receiving the decision, or, alternatively, by bringing an action before this court within twelve months of receiving the decision. See 41 U.S.C. § 7104 (2012).

On February 2, 2013, DuckeGroupe timely filed a Notice of Intent to Appeal with the CBCA, seeking review of its claim for $47,440.00 in reimbursement for its alleged operating deficit, pursuant to CBCA's accelerated small-claims procedure under 48 C.F.R. § 6101.52. DuckeGroupe claimed it was entitled to such reimbursement given its reasonable reliance on the government's estimated need of nine beds in calculating the $60.00 per-diem rate, which, it asserted, "was reasonably based on our assumption that there would be approximately nine veterans occupying the facilities." In a June 24, 2013 opinion, the CBCA denied DuckeGroupe's claim for reimbursement. The CBCA found that the VA only was obligated to pay DuckGroupe at the per-diem rate for those veterans actually referred to and served by Haven House, and that "[t]he contractor, not the agency, bore the risk that beds would not be utilized fully over the base and option periods." DuckeGroupe subsequently filed a request for reconsideration, which was denied by the CBCA on October 28, 2013. The CBCA concluded in its reconsideration decision that "[t]he contractor has not provided a valid basis for reconsideration," because "[t]he simple fact that the agency ordered fewer services during the first option year than estimated at the time of the award does not demonstrate any inaccuracy in formulating the estimates." The CBCA also noted that DuckeGroupe "overlook[ed] the explicit cautions in the solicitation and contract, wherein the agency noted that services to be required could not be determined with any certainty, and that payment would be based upon services ordered and rendered."

Following the CBCA's denial of DuckeGroupe's request for reconsideration, on April 18, 2014, DuckeGroupe and Mr. Woodruff filed the pro se complaint, along with a

---

[5] The court notes that while no time-stamp appears with this email, the CBCA "Rule 4 File Index," filed along with Mr. Woodruff's transfer complaint, describes this email communication as having been sent on October 15, 2012.

motion to proceed in forma pauperis, in the United States District Court for the Northern District of Ohio, in which the plaintiffs requested judicial review of the CBCA's decision, alleged claims of breach of contract and slander, and sought relief in the amount of $47,000.00 in damages and a "permanent injunction against the defendant from performing certain acts in the future." In an October 8, 2014 Order, as noted above, the District Court removed DuckeGroupe from the caption of the case, granted Mr. Woodruff's motion to proceed in forma pauperis, dismissed his slander claim and request for judicial review of the CBCA decision, and ordered the transfer of his remaining breach-of-contract claim to this court because plaintiff sought damages in excess of $10,000.00. See Woodruff v. Louis Stokes Veterans Admin. VA Healthcare Sys. of Ohio, No. 1:14-CV-837.

The government has moved to dismiss plaintiffs' complaint in the United States Court of Federal Claims pursuant to Rules 12(b)(1) (2015) and 12(b)(6) (2015) of the Rules of the United States Court of Federal Claims (RCFC), for lack of subject matter jurisdiction and failure to state a claim for which relief may be granted, respectively. The government claims that "[t]his Court lacks jurisdiction because Mr. Woodruff is not a party to the underlying agreement and this matter has already been adjudicated in the Civilian Board of Contract Appeals (CBCA)," which, citing the Contract Disputes Act (CDA) and the election doctrine, "foreclosed plaintiff's ability to raise the same claims in this Court." Moreover, according to defendant, even if this court otherwise had jurisdiction, Mr. Woodruff's complaint must be dismissed as untimely, because he failed to file it within twelve months of receiving the contracting officers decision as required by the CDA, 41 U.S.C § 7104(b)(3). Further, according to defendant, "Mr. Woodruff has failed to allege any facts which could constitute a breach of contract." According to defendant, the agreement between the VA and DuckGroupe was "an illusory promise, and not a binding contract," because it was a requirements contract that did not "contain a definite quantity, a minimum quantity term, or require exclusivity." Defendant further states that while "contractual obligations were created when VA actually referred veterans to Duck Group, at which point VA was bound to pay for the services rendered those veterans," "Mr. Woodruff has not alleged that VA failed to pay for any services actually provided to veterans at the per diem rate."

In response, Mr. Woodruff filed a "Motion to Deny Dismissal Motion in order to Proceed" in this court.[6] While written in a somewhat unclear fashion, plaintiff's response to defendant's motion to dismiss tries to respond to each of defendant's arguments in favor of dismissal. With respect to defendant's claim that Mr. Woodruff is not privy to the contract and, therefore, cannot assert a breach claim in this court, plaintiff appears to claim privity based on the fact that "Plaintiff negotiated the terms of the contract with the Defendant's **Contracting Officer**. Thus, according to plaintiff, his ability to act in this manner constitutes "the *doctrine of apparent authority*." (emphasis in original.) With respect to Defendant's argument regarding the election doctrine, Mr. Woodruff states:

---

[6] As also discussed above, the caption of the transfer complaint filed in this court on January 20, 2015 listed both Mr. Woodruff and DuckeGroupe as plaintiffs, however, plaintiff's June 2, 2015 response motion listed only Mr. Woodruff in the caption.

> The CBCA heard a case involving an LLC; [sic] *The DuckeGroupe vs The Veterans Administration.* Plaintiff has subsequently brought a claim before **The United States District Court Northern District of Ohio Court** in [sic] behalf of Plaintiff in [sic] turn that Court 'transferred' the case to the United States Court of Federal Claim..." [sic] Since that time the Plaintiff has filed all motions and pleadings in a timely manner.

(emphasis in original).

With regard to the timeliness of the filing, plaintiff cites two decisions by New York State Courts for the proposition that "'*untimely filing does not automatically warrant dismissal* **where motion is meritorious and the opposing party may not be prejudiced**.'" (emphasis in original). As for defendant's claim that plaintiff had failed to state a valid claim for relief, plaintiff alleges that his complaint has set forth a plausible factual basis for a breach-of-contract claim, based on what Mr. Woodruff characterizes as Mr. Romaniuk's unilateral attempt to modify the terms of the contract in the June 27, 2012 email reducing the number of beds required from nine to five. Plaintiff alleges this was a change only the Contracting Officer himself could effectuate, stating that: "***Whereas parties and or individuals other than the CO for the Government and Plaintiff for the Contractor made changes in 'the terms and conditions of (the) contract' a breach has occurred.***" (emphasis in original). Additionally, plaintiff claims the low occupancy of Haven House during the option year violated his reasonable expectations, stating that "[u]nder the ***doctrine of reasonable expectation /reasonable interpretation*** if the Government requested approximately '9' beds. [sic] The Plaintiff reasonably could rely on the fact that nine meant nine." (emphasis in original). This expectation factored into his acceptance of the per-diem rate of $60.00 per veteran per day agreed to in the contract. According to plaintiff's reply "[t]he Plaintiff's organization accepted that proposal with the understanding that Government needed 'approximately 9 beds.'"[7]

## DISCUSSION

As a preliminary matter, the court addresses the issue of the plaintiffs listed in the caption of the <u>pro se</u> transfer complaint filed in this case: "THE DUCKEGROUPE, LLC., dba HAVEN HOUSE FOR HOMELESS VETERANS, Donald A. Woodruff." (capitalization in original). While the District Court, in its Order dated October 8, 2014, may or may not have formally dismissed DuckeGroupe from the case filed in the Northern District of Ohio, it amended the caption to list only "Donald A. Woodruff" as the plaintiff. <u>See</u> <u>Woodruff v. Louis Stokes Veterans Admin. VA Healthcare Sys. of Ohio</u>, No. 1:14-CV-837, slip op. at 1. In a footnote in its Order, the District Court stated that "[a]lthough the complaint also purports to be filed on behalf of Haven House for Veterans dba the DuckeGroupe,

---

[7] Mr. Woodruff subsequently filed a document with the court titled "PLAINTIFF'S RESPONSE TO DEFENDANT' REPONSE [sic] TO PLAINTIFF'S MOTION TO PROCEED." (capitalization in original). This document does not contain any new arguments not previously made in Mr. Woodruff's "Motion to Deny Dismissal Motion in order to Proceed."

corporations and non-incorporated organizations cannot appear *pro se* in any litigation and are required to appear in court through an attorney." Id. at 1 n.1. The Rules of the United States Court of Federal Claims similarly state that "[a]n individual who is not an attorney may represent oneself or a member of one's immediate family, but may not represent a corporation, an entity, or any other person in any proceeding before this court." RCFC 83.1(a)(3) (2015). See also Talasila, Inc. v. United States, 240 F.3d 1064, 1066 (Fed. Cir.) ("[Plaintiff] must be represented by counsel in order to pursue its claim against the United States in the Court of Federal Claims."), reh'g and reh'g en banc denied (Fed. Cir. 2001); Finast Metal Prods., Inc. v. United States, 12 Cl. Ct. 759, 761 (1987) ("[A] corporate 'person' can no more be represented in court by a non-lawyer—even its own president and sole shareholder—than can any individual."); Affourtit v. United States, 79 Fed. Cl. 776, 779 (2006) ("A corporation appearing before the United States Court of Federal Claims . . . must be represented by an attorney.") This rule applies despite possible financial hardship imposed on the plaintiff, and despite the fact that Mr. Woodruff has indicated he cannot afford an attorney in his motion to proceed in forma pauperis filed with the District Court. See Richdel, Inc. v. Sunspool Corp., 699 F.2d 1366, 1366 (Fed. Cir. 1983) (holding that the plaintiff's "substantial financial hardship" did not waive the rule requiring corporations to be represented by counsel); Balbach v. United States, 119 Fed. Cl. 681, 683 (2015) ("A *pro se* plaintiff cannot represent a corporation . . . The Court cannot waive this rule, even for cases of severe financial hardship." (citing Affourtit v. United States, 79 Fed. Cl. at 780)). Therefore, because corporations may not appear before the United States Court of Federal Claims without an attorney, DuckeGroupe must be dismissed from this case, leaving Mr. Woodruff as the sole plaintiff before this court.

The court recognizes, however, that Mr. Woodruff is proceeding pro se, without the assistance of counsel. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520–21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9–10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524, aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities

in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting <u>Henke v. United States</u>, 60 F.3d 795, 799 (Fed. Cir. 1995)); <u>Harris v. United States</u>, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting <u>Minehan v. United States</u>, 75 Fed. Cl. at 253)).

Even granting the more liberal construction afforded to <u>pro se</u> pleadings, Mr. Woodruff's sometimes rambling and confusing pleadings fail to assert a valid basis for this court's jurisdiction. It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 514 (2006) (quoting <u>United States v. Cotton</u>, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." <u>Henderson ex rel. Henderson v. Shinseki</u>, 131 S. Ct. 1197, 1202 (2011); <u>see also</u> <u>Gonzalez v. Thaler</u>, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider <u>sua sponte</u> issues that the parties have disclaimed or have not presented."); <u>Hertz Corp. v. Friend</u>, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. at 514)); <u>Special Devices, Inc. v. OEA, Inc.</u>, 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing <u>Johannsen v. Pay Less Drug Stores N.W., Inc.</u>, 918 F.2d 160, 161 (Fed. Cir. 1990))); <u>View Eng'g, Inc. v. Robotic Vision Sys., Inc.</u>, 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy." <u>Sebelius v. Auburn Reg'l Med. Ctr.</u>, 133 S. Ct. 817, 824 (2013); <u>see also</u> <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. at 506 ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); <u>Cent. Pines Land Co., L.L.C. v. United States</u>, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. at 506–07)); <u>Rick's Mushroom Serv., Inc. v. United States</u>, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. at 506; <u>Folden v. United States</u>, 379 F.3d 1344, 1354 (Fed. Cir.), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2004), <u>cert. denied</u>, 545 U.S. 1127 (2005); and <u>Fanning, Phillips & Molnar v. West</u>, 160 F.3d 717, 720 (Fed. Cir. 1998))); <u>Pikulin v. United States</u>, 97 Fed. Cl. 71, 76, <u>appeal dismissed</u>, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise <u>sua sponte</u>, even where . . . neither party has raised this issue." <u>Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings</u>, 370 F.3d 1354, 1369 (Fed. Cir.) (citing <u>Textile Prods., Inc. v. Mead Corp.</u>, 134 F.3d 1481, 1485 (Fed. Cir.), <u>reh'g denied</u> and <u>en banc suggestion declined</u> (Fed. Cir.), <u>cert. denied</u>, 525 U.S. 826 (1998)), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2004), <u>cert. granted in part sub. nom</u> <u>Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc.</u>, 546 U.S.

975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006); see also Avid Identification Sys., Inc. v. Crystal Import Corp., 603 F.3d 967, 971 (Fed. Cir.) ("This court must always determine for itself whether it has jurisdiction to hear the case before it, even when the parties do not raise or contest the issue."), reh'g and reh'g en banc denied, 614 F.3d 1330 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 909 (2011).

Pursuant to the RCFC and the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2015); Fed. R. Civ. P. 8(a)(1), (2) (2015); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–56 (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984), reh'g denied, 468 U.S. 1226 (1984); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003). If a defendant or the court challenges jurisdiction

or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); see also Land v. Dollar, 330 U.S. 731, 735 n. 4 (1947); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988); Catellus Dev. Corp. v. United States, 31 Fed. Cl. 399, 404–05 (1994).

The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . .

Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." <u>Eastport S.S.</u>, 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." <u>Id.</u>; <u>see also</u> [<u>United States v. ]Testan</u>, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting <u>Eastport S.S.</u>, 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

<u>Ontario Power Generation, Inc. v. United States</u>, 369 F.3d 1298, 1301 (Fed. Cir. 2004); <u>see also</u> <u>Twp. of Saddle Brook v. United States</u>, 104 Fed. Cl. 101, 106 (2012).

## **Privity of Contract with the United States**

As a threshold matter, the court must decide whether Mr. Woodruff, the sole remaining plaintiff in this case, was in privity of contract with the United States, as is required to sue the federal government under the Tucker Act for breach of contract. Contract claims against the United States are governed by the Tucker Act, which grants jurisdiction to this court as follows:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. <u>See</u> <u>United States v. Navajo Nat.</u>, 556 U.S. 287, 289-90 (2009); <u>United States v. Mitchell</u>, 463 U.S. 206, 215 (1983); <u>see also</u> <u>Kam-Almaz v. United States</u>, 682 F.3d at 1368; <u>Greenlee Cnty., Ariz. v. United States</u>, 487 F.3d 871, 875 (Fed. Cir.), <u>reh'g</u> <u>and</u> <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u> (Fed. Cir. 2007), <u>cert.</u> <u>denied</u>, 552 U.S. 1142 (2008); <u>Palmer v. United States</u>, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

As indicated by the Tucker Act, privity of contract between a plaintiff and the United States government is required to bring a cause of action in the United States Court of

Federal Claims for express and implied contracts. See Cienega Gardens v. United States, 194 F.3d 1231, 1239 (Fed. Cir. 1998) ("Under the Tucker Act, the Court of Federal Claims has jurisdiction over claims based on 'any express or implied contract with the United States.' 28 U.S.C. § 1491(a)(1) (1994); We have stated that '[t]o maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the government.' Ransom v. United States, 900 F.2d 242, 244 (Fed. Cir. 1990)."), cert. denied, 528 U.S. 820 (1999); see also Estes Exp. Lines v. United States. 739 F.3d 689, 693 (Fed. Cir. 2014); Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1265 (Fed. Cir. 2005) (The "government consents to be sued only by those with whom it has privity of contract."); S. Cal. Fed. Sav. & Loan Ass'n v. United States, 422 F.3d 1319, 1328 (Fed. Cir.) ("A plaintiff must be in privity with the United States to have standing to sue the sovereign on a contract claim," but noting exceptions to this general rule (citing Anderson v. United States, 344 F.3d 1343, 1352 (Fed. Cir. 2003)), reh'g and reh'g en banc denied (Fed. Cir. 2005), cert. denied, 548 U.S. 904 (2006); United States v. Algoma Lumber Co., 305 U.S. 415, 421 (1939))); Erickson Air Crane Co. of Wash. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984) ("The government consents to be sued only by those with whom it has privity of contract.").

To have privity of contract with the government, and, therefore, invoke the jurisdiction of the United States Court of Federal Claims for its breach of contract claim, plaintiff "must show that either an express or implied-in-fact contract underlies [the] claim." Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997). "For there to be an express contract, the parties must have intended to be bound and must have expressed their intention in a manner capable of understanding. A definite offer and an unconditional acceptance must be established." Russell Corp. v. United States, 210 Ct. Cl. 596, 606, 537 F.2d 474, 481 (1976), cert. denied, 429 U.S. 1073 (1977). Implied-in-fact contracts are agreements ""founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."" Trauma Serv. Grp. v. United States, 104 F.3d at 1325 (quoting Hercules, Inc. v. United States, 516 U.S. 417, 424 (1996) (quoting Balt. & Ohio R.R. Co. v. United States, 261 U.S. 592, 597 (1923))); see also Kam-Almaz v. United States, 682 F.3d at 1368; Bank of Guam v. United States, 578 F.3d 1318, 1329 (Fed. Cir. 2009) (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1326); Bay View, Inc. v. United States, 278 F.3d 1259, 1265-66 (Fed. Cir. 2001), reh'g and reh'g en banc denied, 285 F.3d 1035 (Fed. Cir.), cert. denied, 537 U.S. 826 (2002); Westlands Water Dist. v. United States, 109 Fed. Cl. 177, 203 (2013); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. 720, 728 (2010) (citing Balt. & Ohio R.R. Co. v. United States, 261 U.S. at 597); Russell Corp. v. United States, 210 Ct. Cl. at 609, 537 F.2d at 482. Such an agreement will not be implied "unless the meeting of minds was indicated by some intelligible conduct, act or sign." Balt. & Ohio R.R. Co. v. United States, 261 U.S. at 598; see also Russell Corp. v. United States, 210 Ct. Cl. at 609, 537 F.2d at 482.

Privity of contract with the government generally is required for a party to have standing to sue the United States in this court for breach of contract. A party lacking privity with the United States may be able to sue the federal government, however, if it can demonstrate that it is an intended third-party beneficiary of a contract with the United

States. See Sioux Honey Ass'n v. Hartford Fire Ins. Co., 672 F.3d 1041, 1056 (Fed. Cir.), cert. denied, 133 S. Ct. 126 (2012) ("A plaintiff lacking privity of contract can nonetheless sue for damages under that contract if it qualifies as an intended third-party beneficiary."); Alpine Cnty., Cal. v. United States, 417 F.3d 1366, 1368 (Fed. Cir. 2005) ("In order to sue for damages on a contract claim, a plaintiff must have either direct privity or third-party beneficiary status."); Anderson v. United States, 344 F.3d at 1352 ("Without either direct privity or third-party beneficiary status, the Paul sons lack standing to sue the government and cannot therefore recover damages from the United States."); Nelson Const. Co. v. United States, 79 Fed. Cl. 81, 95 (2007); Entergy Nuclear Indian Point 2, LLC v. United States, 64 Fed. Cl. 515, 523 (2005) ("To have standing to bring a breach of contract claim, plaintiffs must also be in privity of contract with the government or a third party beneficiary of a contract with the government."); see also Sullivan v. United States, 625 F.3d 1378, 1380 (Fed. Cir. 2010) ("This Court has recognized limited exceptions to that general rule when a party standing outside of privity 'stands in the shoes of a party within privity.'" (quoting First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1289 (Fed. Cir. 1999), reh'g en banc denied (Fed. Cir. 2000))); O. Ahlborg & Sons, Inc. v. United States, 74 Fed. Cl. 178, 188 (2006) ("The third-party beneficiary exception exists to cover situations in which the subcontractor 'stands in the shoes of a party with privity.'" (quoting First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d at 1289)). But see Chancellor Manor v. United States, 331 F.3d 891, 901 (Fed. Cir. 2003) (holding that "Appellants could establish privity of contract if they are intended third-party beneficiaries of a contract with the United States . . . ." (citing First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d at 1289; Stockton E. Water Dist. v. United States, 70 Fed. Cl. 515, 526 (2006) ("One method of 'establish[ing] privity of contract [is] if [plaintiffs] are intended third-party beneficiaries of a contract with the United States . . . .'" (quoting Chancellor Manor v. United States, 331 F.3d at 901)) (modifications in original), judgment entered, 75 Fed. Cl. 321, modifying in part, 76 Fed. Cl. 470, reconsideration denied, 76 Fed. Cl. 497 (2007), rev'd on other grounds, 583 F.3d 1344 (Fed. Cir. 2009), partial reh'g granted, 638 F.3d 781 (Fed. Cir. 2011); Klamath Irrigation Dist. v. United States, 67 Fed. Cl. 504, 532 ("Such privity would exist if the irrigators are properly viewed as third-party beneficiaries to the district contracts." (citing Chancellor Manor v. United States, 331 F.3d at 901, and First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d at 1289)), modifying order, 68 Fed. Cl. 119, denying certification of interlocutory appeal, 69 Fed. Cl. 160 (2005).

    In order to sue the United States for breach of contract in this court, a corporate officer or shareholder must show that the government breached a duty owed directly and personally to that person independent of those benefits conferred on the corporation with which the officer or shareholder is affiliated. See First Annapolis Bancorp., Inc. v. United States, 644 F.3d 1367, 1373 (Fed. Cir. 2011) ("[A] shareholder, whether an individual or a holding company, 'generally does not have standing to assert a breach of contract claim on behalf of the corporation.'" (quoting Fed. Deposit Ins. Corp. v. United States, 342 F.3d 1313, 1319 (Fed. Cir. 2003))); S. Cal. Fed. Sav. & Loan Ass'n v. United States, 422 F.3d 1319, 1332 (Fed. Cir. 2005) ("This court has regularly acknowledged the legal distinction between a corporation and its shareholders and rejected claims by shareholders to assert a breach of contract claim on behalf of the corporation." (citing First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d at 1289)), cert. denied sub nom. Martin

v. United States, 548 U.S. 904 (2006); Castle v. United States, 301 F.3d 1328, 1339 (Fed. Cir.) ("Castle and Harlan signed the [Regulatory Capital Maintenance Agreement (RCMA)] in their individual capacities. They are direct parties to the RCMA. We therefore hold that Castle and Harlan have standing to allege breach of contract based upon the RCMA and the documents it allegedly incorporates . . . ."), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 539 U.S. 925 (2003); Glass v. United States, 258 F.3d 1349, 1354 (Fed. Cir. 2001) ("In order to prove third party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party directly."); Affourtit v. United States, 79 Fed. Cl. at 779 ("In this case, IRI is the party that entered into a contract with the Government . . . Therefore, Thomas D. Affourtit is not in privity with the Government, and the court does not have jurisdiction to adjudicate the allegations set forth in the Complaint."); Smith v. United States, 58 Fed. Cl. 374, 382 (2003) ("[T]he Smith plaintiffs will only be able to establish standing and maintain their claim against the government if they demonstrate the government breached an express or implied duty owed to the Smiths personally and independently of their status as shareholders of NCF."); Walker v. United States, 231 Ct. Cl. 761, 763 (1982) ("Officers and stockholders (including sole owners) of a corporation that contracts with the United States are not considered the real party in interest and have no standing to sue on the corporation's behalf.") (citing Algonac Mfg. Co. v. United States, 192 Ct. Cl. 649, 662 (1970)); Robo Wash, Inc. v. United States, 223 Ct. Cl. 693, 697 (1980) ("[I]n order for a stockholder to sue for direct injuries, the wrong must amount to a breach of duty owed to the stockholder personally, and independently of his or her status as a stockholder."); Algonac Mfg. Co. v. United States, 192 Ct. Cl. at 662 (holding that a sole shareholder was not a party to his corporation's contract with the United States and thus lacked privity to sue for alleged breach of contract).

The September 23, 2010 VA contract, on which Mr. Woodruff's breach of contract claims in this court are based, lists the "DUCKE GROUPE" as the "CONTRACTOR/OFFEROR" and is signed by Donald A. Woodruff, in his capacity as "MEMBER Ducke Groupe, LLC." (capitalization in original). Nowhere in the contract is Mr. Woodruff's name listed other than in his capacity as a DuckeGroupe member or director, nor does VA express in the contract or imply an intent to confer any sort of benefit on Donald A. Woodruff as an individual, which suggests that the contract only established obligations between the VA and DuckeGroupe, not with respect to Donald A. Woodruff as an individual. Therefore, Mr. Woodruff lacks standing as either a person in privity with the government or a third-party beneficiary of the contract. As such he may not bring a breach of contract claim against the United States through the VA in this court.

In his response to defendant's motion to dismiss, Mr. Woodruff appears to argue that his privity with the government, and, therefore, his standing to allege a breach of contract in this court, arises from "the fact that the Plaintiff negotiated the terms of the contract with the Defendant's **Contracting Officer**," and that "his ability to act in this manner constitutes the '*doctrine of apparent authority*.'" (emphasis in original). As discussed above, however, this court has held that the position of a corporate officer or shareholder alone does not endow them with standing to sue for breach of contract, and that "[t]his rule includes officers who conducted contract negotiations on behalf of a

corporation." <u>Pacetti v. United States</u>, 50 Fed. Cl. 239, 245 (2001); <u>see also</u> <u>First Annapolis Bancorp., Inc. v. United States</u>, 644 F.3d at 1373 ("[S]hareholders are not allowed 'to rely on their involvement in the negotiation process or their role in funding a transaction to alter their chosen legal status.'" (quoting <u>S. Cal. Fed. Sav. & Loan Ass'n v. United States</u>, 422 F.3d at 1332)). Regardless of Mr. Woodruff's authority to execute the contract as a "MEMBER," whatever position in the corporate entity he might have held at DuckeGroupe, the fact remains that he was neither a named party or named as an intended third-party beneficiary of the agreement, and, therefore, plaintiff lacks standing to sue the United States for breach of contract.

## Election Doctrine

In addition to the fact that plaintiff is neither in privity with the United States, nor an intended third-party beneficiary of DuckeGroupe's contract with the VA, and, therefore, unable to pursue this suit in this court, DuckeGroupe's decision initially to appeal the Contracting Officer's final decision, dated January 9, 2013, to the CBCA foreclosed Mr. Woodruff's or DuckeGroupe's ability to bring a suit based on the same contract and claim in this court according to the election doctrine included in the CDA. <u>See</u> 41 U.S.C. § 7104. The CDA established an exclusive dispute-resolution mechanism for "any express or implied contract . . . made by an executive agency" for four types of contracts, including those made for "the procurement of services." 41 U.S.C. § 7102(a)(2) (2012). The CDA provides that a contractor making a claim against the federal government based on a contract with the United States first shall submit its claim, in writing, to the Contracting Officer responsible for that contract. <u>See</u> 41 U.S.C. § 7103(a) (2012). If the Contracting Officer renders a final decision adverse to a contractor's claim, the contractor may appeal that decision to the relevant agency Board within ninety days of receiving it. <u>See</u> 41 U.S.C. § 7104(a). Alternatively, "in lieu of appealing the decision of a contracting officer . . . to an agency board, the aggrieved contractor may bring an action directly on the claim in the United States Court of Federal Claims," 41 U.S.C. § 7104(b)(1), so long as that action is brought within twelve months of the contractor's receipt of the adverse Contracting Officer's final decision. <u>See</u> 41 U.S.C. § 7104 (b)(3).

While the CDA offers contractors a choice of forums in which to appeal an adverse Contracting Officer's final decision, once a contractor has decided between appealing to the relevant Board of Contract Appeals or bringing a suit in this court, the contractor is precluded from bringing the same claim in the alternative forum, so long as the plaintiff's choice was informed, knowing, and voluntary and the forum chosen has jurisdiction. <u>See</u> <u>Bonneville Assocs. v. United States</u>, 43 F.3d 649, 655 (Fed. Cir. 1994) (citing <u>Mark Smith Constr. Co. v. United States</u>, 10 Cl. Ct. 540, 544 (1986)). According to the United States Court of Appeals for the Federal Circuit:

> It is well established that, pursuant to the Contract Disputes Act, a contractor wishing to contest an adverse final decision by the contracting officer either may appeal the contracting officer's adverse decision to the appropriate board of contract appeals or may contest the contracting officer's decision directly to the Claims Court [Court of Federal Claims]. This

choice has given rise to a body of jurisprudence known as the "Election Doctrine."

…

Once a contractor makes a binding election under the Election Doctrine to appeal the contracting officer's adverse decision to the appropriate board of contract appeals, that election must stand and the contractor can no longer pursue its claim in the alternate forum. Under the Election Doctrine, the binding election of forums is an "either-or" alternative, and, as such, does not provide a contractor with dual avenues for contesting a contracting officer's diverse decision.

Nat'l Neighbors, Inc. v. United States, 839 F.2d 1539, 1541-42 (Fed. Cir. 1988) (citing Tuttle/White Constructors, Inc. v. United States, 228 Ct. Cl. 354, 361, 656 F.2d 644, 647, 649 (1981)) (footnote omitted). This rule was reiterated in Texas Health Choice, L.C. v. Office of Personnel Management, in which the Federal Circuit stated:

The CDA provides alternative forums for challenging a [contracting officer's] final decision: a contractor may file an appeal with the appropriate board of contract appeals, 41 U.S.C. § 606 (1988), or appeal directly to the Court of Federal Claims, 41 U.S.C. § 609(a)(1) (Supp. V 1993). Courts have consistently interpreted the CDA as providing the contractor with an either-or choice of forum.

Texas Health Choice, L.C. v. Office of Pers. Mgmt., 400 F.3d 895, 899 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2005); see also Palafox St. Assocs., L.P. v. United States, No. 13–247C, 2015 WL 3777148, at *6 (Fed. Cl. June 18, 2015) ("Pursuant to the election doctrine, once a contractor chooses the forum in which to lodge its appeal, the contractor's choice is binding, and the contractor is no longer able to pursue its appeal in the alternate forum." (citing Nat'l Neighbors, Inc. v. United States, 839 F.2d at 1542)); Bowers Inv. Co v. United States, 104 Fed. Cl. 246, 254 (2011), aff'd, 695 F.3d 1380 (Fed. Cir. 2012); Paradigm Learning, Inc. v. United States, 93 Fed. Cl. 465, 474 (2010) ("Thus, if a contractor makes an informed, knowing, and voluntary decision to pursue its appeal in another forum with jurisdiction over the appeal, the Court of Federal Claims is required to dismiss a subsequently filed appeal concerning the same claim for lack of jurisdiction." (citing Bonneville Assocs. v. United States, 43 F.3d at 655)); Am. Telecom Corp. v. United States, 59 Fed. Cl. 467, 471 (2004) ("The 'in lieu of' language in section 609(a) clearly indicates that the contractor has a choice of forums but does not allow the contractor to pursue its claims before both forums." (citing Tuttle/White Constructors, Inc. v. United States, 228 Ct. Cl. at 361, 656 F.2d at 649)). For a complainant's choice of forum to bar subject matter jurisdiction in the unselected forum, the reviewing forum must have had jurisdiction over the original claims. See Bonneville Assocs., Ltd. P'shp. v. Barram, 165 F.3d 1360, 1362 (Fed. Cir.) (citing Bonneville Assocs. v. United States, 43 F.3d at 653), cert. denied, 528 U.S. 809 (1999).

The Contracting Officer's final decision, dated January 9, 2013, informed Mr. Woodruff he could choose to appeal the decision to the CBCA within ninety days or "[i]nstead of appealing to the CBCA, you may bring an action directly in the United States Court of Federal Claims . . . within 12 months of the date you receive this decision." This demonstrates that the subsequent decision by DuckeGroupe to appeal to the CBCA was informed, knowing, and voluntary. See Bonneville Assocs. v. United States, 43 F.3d at 655 (citing Bonneville Assocs. v. United States, 30 Fed. Cl. 85, 90 (1993)); Palafox St. Assocs., L.P. v. United States, 114 Fed. Cl. 773, 788 (2014) (holding that the CO's communication to the plaintiff of his options for appeal under the CDA supported a finding that plaintiff's subsequent decision to appeal to the CBCA was informed, knowing, and voluntary). DuckGroupe filed a timely notice of intent to appeal the Contracting Officer's final decision on February 2, 2013. The CBCA appropriately exercised its jurisdiction over the appeal and issued a decision on June 24, 2013 denying DuckeGroupe's claim for reimbursement in its entirety.

Separate lawsuits can only be maintained at the appropriate Board of Contract Appeals and the Court of Federal Claims so long as the suits are based on different claims. See Phillips/May Corp. v. United States, 524 F.3d 1264, 1272 (Fed. Cir. 2008) ("The presumption that claims arising out of the same contract constitute the same claim for res judicata purposes may be overcome by showing that the claims are unrelated."); Placeway Const. Corp. v. United States, 920 F.2d 903, 907 (Fed. Cir. 1990) ("To determine whether two or more separate claims, or only a fragmented single claim, exists, the court must assess whether or not the claims are based on a common or related set of operative facts."); Affiliated Const. Grp. v. United States, 115 Fed. Cl. 607, 612 (2014); BRC Lease Co. v. United States, 93 Fed. Cl. 67, 72 (2010) (holding that if separate Contracting Officer decisions were based on substantially the same facts, the election doctrine barred their appeal to separate forums (citing Glenn v. United States, 858 F.2d 1277, 1280 (Fed. Cir. 1988))). In the present case, it is evident that the claims advanced by Mr. Woodruff in this court are substantially identical to those included in the appeal to the CBCA, namely that the VA's underutilization of the Haven House facility during the 2011-12 option year allegedly led DuckeGroupe to operate at a deficit, for which Mr. Woodruff alleges he or the company should be entitled to reimbursement in the amount of approximately $47,000.00.[8] Indeed, the complaint filed by Mr. Woodruff and DuckGroupe in the Northern District of Ohio explicitly stated in the first cause of action that review of the CBCA's adverse decision was sought. As the CBCA has already considered and denied DuckeGroupe's appeal from the Contracting Officer's final decision, this court is precluded from reconsidering the matter, and Mr. Woodruff's claim in this court must be dismissed. Plaintiff's apparent argument that the District Court's decision to transfer his breach-of-contract claim to this court renders the election doctrine inapplicable to his case is unavailing. Although this court indeed has exclusive jurisdiction in the federal court system over monetary claims against the United States in excess of $10,000.00 under the Tucker Act, 28 U.S.C. § 1491, as also identified by the District

---

[8] The court notes that although the CBCA's decision states that the claim was for $47,400.00, the complaint filed in the Northern District of Ohio only sought $47,000.00.

Court, the election doctrine precludes this court from reviewing a contract claim based on Contract No. VA250-P-0592 for the $47,000.00 Mr. Woodruff seeks.

## Timeliness under the CDA Statute of Limitations

Furthermore, even absent plaintiff's lack of privity of contract and the knowing election to proceed with an appeal of the Contracting Officer's final decision in the CBCA, the complaint filed jointly by DuckeGroupe and Mr. Woodruff in the Northern District of Ohio was filed more than twelve months after receipt of the Contracting Officer's final decision, and was, therefore, untimely. The CDA provides that a contractor seeking review of a Contracting Officer's final decision in the Court of Federal Claims must file suit in the court "within 12 months from the date of receipt of a contracting officer's decision." 41 U.S.C. § 7104(b)(3). While it is not clear exactly on which date Mr. Woodruff received a copy of Contracting Officer Glen Johnson's final decision, dated January 9, 2013, it is apparent that he received the document on or before February 2, 2013, the date he filed a Notice of Intent to Appeal with the CBCA. Therefore, to satisfy the statute of limitations provided by 41 U.S.C. § 7104(b)(3), Mr. Woodruff would have had to file a federal court complaint, alternative to filing at the CBCA, no later than February 1, 2014. The complaint submitted by DuckeGroupe and Mr. Woodruff to the United States District Court was filed on April 18, 2014, and, therefore, even after transfer, must be considered untimely.

In defending the untimeliness of his complaint under the CDA, plaintiff cites to two decisions of New York state courts, <u>Riddick v. City of New York</u>, 4 A.D.3d 242, 245 (N.Y. App. Div. 2004), and <u>Brown v. Noble, Inc.</u>, 920 N.Y.S.2d 239 (N.Y. Super. Ct. 2010), which, Mr. Woodruff claims, stand for the proposition that untimely pleadings do not automatically warrant dismissal if the filings are meritorious and do not cause prejudice to the opposing party. Neither of these state-court cases, however, assist plaintiff's position. It is well established that the decisions of state courts have no authority over federal courts deciding issues of federal law. <u>See</u>, <u>e.g.</u>, <u>Cienega Gardens, Inc. v. United States</u>, 33 Fed. Cl. 196, 216 (1995) ("Precedents of the New York Court of Appeals, of course, are not binding on the Court of Federal Claims."), <u>vacated</u> <u>on</u> <u>other</u> <u>grounds</u>, 194 F.3d 1231 (Fed. Cir. 1998). Additionally, the CDA's twelve month statute of limitations is a jurisdictional rule, and as a result, may not be extended or waived for equitable purposes. <u>See</u> <u>Hart v. United States</u>, 910 F.2d 815, 818-19 (Fed. Cir. 1990) ("The statute of limitations is jurisdictional in nature and, as an express limitation on the waiver of sovereign immunity, may not be waived. Courts are not free to engraft exceptions on the statute of limitations."); <u>Renda Marine, Inc. v. United States</u>, 71 Fed. Cl. 782, 789 (2006) ("Absent congressional action, the court cannot read into the CDA 'exceptions' to the specific statutory time limit for bringing actions under the CDA in this court." (citing <u>United States v. Kasler Elec. Co.</u>, 123 F.3d 341, 346 (6th Cir.1997))); <u>White Buffalo Const., Inc. v. United States</u>, 28 Fed. Cl. 145, 147 (1992) ("Because Congress legislatively mandated the twelve-month time period, it cannot be extended out of sympathy for particular litigants, even if this effects a seemingly harsh result."); <u>Jones v. United States</u>, 9 Cl. Ct. 292, 295 (1985) ("[T]he statute of limitations is jurisdictional and the court cannot waive it on grounds of policy or equity."), <u>aff'd</u>, 801 F.2d 1334 (Fed. Cir. 1986), <u>cert.</u> <u>denied</u>, 481 U.S. 1013 (1987). This court has no authority to extend the CDA's twelve month statute

of limitations for equitable or other reasons, meaning plaintiff's complaint is time-barred and must be dismissed for want of subject matter jurisdiction.

## CONCLUSION

For all of the reasons discussed above, defendant's motion to dismiss for lack of subject matter jurisdiction is hereby **GRANTED**. Plaintiff's complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED**.

_____
**MARIAN BLANK HORN**
**Judge**